## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA
## CHARLESTON DIVISION

DANIEL F. SLONAKER,                      )
                                         )
            **Plaintiff,**               )
v.                                       )          **Civil Action No. 2:21-00036**
                                         )
BETSY JIVIDIN, *et al.*,                 )
                                         )
            **Defendants.**              )

## PROPOSED FINDINGS AND RECOMMENDATION

On January 14, 2021, Plaintiff filed his Application to Proceed Without Prepayment of

Fees or Costs and his Complaint in this matter claiming entitlement to relief pursuant to 42 U.S.C.

§ 1983.[1] (Document Nos. 1 and 3.) In his Complaint, Plaintiff names the following as Defendants:

(1) Betsy Jividin, Commissioner; (2) West Virginia Division of Corrections and Rehabilitation

("WVDOC"); (3) Donald Ames, Superintendent; and (4) Mount Olive Correctional Complex

("MOCC"). (Document No. 3.) Plaintiff alleges that the above Defendants are violating his

constitutional rights "regarding his security classification level, privilege programs, and/or

eligibility for work release." (Id., p. 1.) Plaintiff explains that Defendants are violating his

constitutional rights "by establishing him as part of a 'suspect class' of 'violent/sexual' offenders

that bars him from participating in privilege programs and/or eligibility for work release." (Id.)

Plaintiff contends that for nearly eight years he has been "unfavorably, illegally, and invidiously

discriminated against" by Defendants. (Id., p. 4.) Plaintiff alleges that although he completed the

Residential Substance Abuse Treatment ("R.S.A.T.") program on April 10, 2014, he "was denied

---

[1] Because Plaintiff is acting *pro se*, the documents which he has filed in this case are held to a less stringent standard than if they were prepared by a lawyer and therefore, they are construed liberally. *See Haines v. Kerner*, 404 U.S. 519, 520-21, 92 S.Ct. 594, 30 L.Ed.2d 652 (1972).

placement in any and all programs and/or jobs suitable to his liking and skills" while "other participants in that program were favorably promoted to better paying and status positions as a reward for completing their commitments." (Id., p. 4.) Plaintiff claims that he applied three different times to be "considered for the Dog Program, only to be noted 'the nature of my past and current convictions barred me from participation." (Id., pp. 6 and 9.) Plaintiff complains that since the time he was unjustifiable terminated from the kitchen, Plaintiff "has been intentionally, systematically, arbitrarily and capriciously denied nearly every rehabilitate function of his choice." (Id., p. 16.) Although Pliantiff states that he submitted three applications from 2015 – 2018 to attend the Appalachian Bible College, Plaintiff alleges he was determined to be ineligible because he was not within 7 years of his parole date time. (Id.) Plaintiff argues that "suspect calls of violent sexual offenders" have been "discriminated against for too long, being continually ostracized from obtaining any and/or all meaningful constructive rehabilitation altogether." (Id.) Plaintiff concludes the foregoing continues cruel and unusual punishment in violation of the Eighth Amendment and a violation of the Equal Protection Clause of the Fourteenth Amendment. (Id., p. 49.) Pliantiff requests declaratory, injunctive, and monetary relief. (Id., pp. 49 – 51.)

As Exhibits, Plaintiff attaches the following: (1) A copy of Petitioner's Inmate Grievance Form dated September 30, 2012 (Id., pp. 5 - 6.); (2) A copy of a Letter of Denial concerning Petitioner's application to the Mount Olive Dog Training Program (Id., p. 7.); (3) A copy of notice dated March 14, 2017, to Plaintiff that he had not been selected for the Paws4People Dog Program due to his current and past offenses (Id., p. 8.); (4) A copy of Plaintiff's Application for Paws4Prisons Application dated August 4, 2014 and February 23, 2017 (Id., pp. 10 – 14.); (5) A copy of Plaintiff's "Supplement to Grievance # 15-MOCC-OAK-101" dated August 3, 2015 (Id.,

p. 15.); (6) A copy of the Requirements for Enrollment Consideration for the Mount Olive Bible College (Id., p. 17.); (7) A copy of Plaintiff's Application for Enrollment for the Mont Olive Bible College (Id., p. 18 – 21.); (8) A copy of Plaintiff's Inmate Grievance Form dated August 27, 2018 (Id., pp. 23 – 24.); (9) A copy of an Incident Report dated June 17, 2019, charging Plaintiff with Refusing an Order (Id., p. 26.); (10) A copy of an Incident Report dated June 14, 2019, charging Plaintiff with "Assault and/or Battery w/o Serious Injury (No Weapon)" (Id., p. 27.); (11) A copy of an Incident Report dated June 17, 2019, charging Plaintiff with "Exposing Body Fluids/Tattooing/Piercing" (Id., p. 28.); (12) A copy of the Memorandum from Superintendent Donald Ames denying Plaintiff's appeal concerning the charge of "Exposing Body Fluids/Tattooing/Piercing" (Id., p. 29.); (13) A copy of Plaintiff's appeal concerning the charge of "Exposing Body Fluids/Tattooing/Piercing" (Id., pp. 30 – 34.); (14) A copy of the "Offender Notification" dated December 5, 2019, stating that the investigation into Plaintiff's allegations of sexual harassment were unsubstantiated (Id., p. 36.); and (15) A copy of Plaintiff's letter to the Division of Personnel" regarding the "Introduction to New Clients' Invidious Discrimination Case" dated November 7, 2019 and attached Exhibit thereto (Id., pp. 38 – 47.).

On January 25, 2021, Plaintiff filed his Memorandum in Support. (Document No. 7.) Plaintiff continues to argue that sexual offenders are a suspect class. (Id.) Plaintiff further complains that "sexual offender" should not be a security classification for inmates. (Id.) Finally, Plaintiff sets forth his political views and why he thinks the laws and sentencing exposure should change for persons convicted of sexual offenses. (Id.)

**THE STANDARD**

Pursuant to 28 U.S.C. § 1915(e)(2)(B), the Court is required to screen each case in which a plaintiff seeks to proceed *in forma pauperis*, and must dismiss the case if the complaint is

3

frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant who is immune from such relief. Pursuant to 28 U.S.C. § 1915A, a similar screening is conducted where a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity. This screening is done prior to consideration of an Application to Proceed Without Prepayment of Fees and Costs, and notwithstanding the payment of any filing fee. On screening, the Court must recommend dismissal of the case if the complaint is frivolous, malicious or fails to state a claim upon which relief can be granted. A "frivolous" complaint is one which is based upon an indisputably meritless legal theory. Denton v. Hernandez, 504 U.S. 25, 112 S.Ct. 1728, 118 L.Ed.2d 340 (1992). A "frivolous" claim lacks "an arguable basis either in law or in fact." Neitzke v. Williams, 490 U.S. 319, 325, 109 S.Ct. 1827, 1831 - 32, 104 L.Ed.2d 338 (1989). A claim lacks an arguable basis in law when it is "based on an indisputably meritless legal theory." Id., 490 U.S. at 327, 109 S.Ct. at 1833. A claim lacks an arguable basis in fact when it describes "fantastic or delusional scenarios." Id., 490 U.S. at 327 - 328, 109 S.Ct. at 1833. A complaint therefore fails to state a claim upon which relief can be granted factually when it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief. With these standards in mind, the Court will assess Plaintiff's allegations in view of applicable law.

This Court is required to liberally construe *pro se* documents, holding them to a less stringent standard than those drafted by attorneys. Estelle v. Gamble, 429 U.S. 97, 106, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976); Loe v. Armistead, 582 F.2d 1291, 1295 (1978). Liberal construction, however, "does not require courts to construct arguments or theories for a *pro se* plaintiff because this would place a court in the improper role of an advocate seeking out the strongest arguments and most successful strategies for a party." Miller v. Jack, 2007 WL 2050409, at * 3 (N.D.W.Va.

4

2007)(citing <u>Gordon v. Leeke</u>, 574 F.2d 1147, 1151 (4th Cir.1978)). Further, liberal construction does not require the "courts to conjure up questions never squarely presented to them." <u>Beaudett v. City of Hampton</u>, 775 F.2d 1274, 1278 (4th Cir. 1985). In other words, a court may not construct legal argument for a plaintiff. <u>Small v. Endicott</u>, 998 F.2d 411 (7th Cir.1993). Finally, the requirement of liberal construction does not mean that the Court can ignore a clear failure in the pleadings to allege facts which set forth a claim currently cognizable in a federal district court. <u>Weller v. Department of Social Servs.</u>, 901 F.2d 387 (4th Cir.1990)). Where a *pro se* Complaint can be remedied by an amendment, however, the District Court may not dismiss the Complaint with prejudice, but must permit the amendment. <u>Denton v. Hernandez</u>, 504 U.S. 25, 34, 112 S.Ct. 1728, 1734, 118 L.Ed.2d 340 (1992); <u>also see</u> <u>Goode v. Central Va. Legal Aide Society, Inc.</u>, 807 F.3d 619 (4th Cir. 2015).

## <u>DISCUSSION</u>

"[F]ederal courts must take cognizance of the valid constitutional claims of prison inmates." <u>Turner v. Safley</u>, 482 U.S. 78, 84, 107 S.Ct. 2254, 2259, 96 L.Ed.2d 64 (1987). Title 42 U.S.C. § 1983 provides a remedy for violations of all "rights, privileges, or immunities secured by the Constitution and laws [of the United States]." Thus, Section 1983 provides a "broad remedy for violations of federally protected civil rights." <u>Monell v. Dep't of Social Services</u>, 436 U.S. 658, 685, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978). Generally speaking, to state and prevail upon a claim under 42 U.S.C. § 1983, a Plaintiff must prove that (1) a person acting under color of State law (2) committed an act which deprived her of an alleged right, privilege or immunity protected by the Constitution or laws of the United States.

1.      <u>**Improper Parties**</u>:

5

In his Complaint, Plaintiff names the WVDOC and MOCC as Defendants. It is well recognized that a Section 1983 claim must be directed at a "person." See Preval v. Reno, 203 F.3d 821 (4th Cir. 2000)(unpublished)(finding that the Piedmont Regional Jail is not a "person" under Section 1983). In Will v. Michigan Dept. of State Police, the Supreme Court held that "neither a State nor its officials acting in their official capacities are 'persons' under § 1983". Will v. Michigan Dept. of State Police, 491 U.S. 58, 66, 109 S.Ct. 2304, 2309, 105 L.Ed.2d 45 (1989). The holding in Will applies not only to suits against the State, but also to suits against "public entities and political subdivisions" that are an "arm or alter ego" of the State. Maryland Stadium Auth. v. Ellerbe Becket Inc., 407 F.3d 255, 260 (4th Cir. 2005)(citation omitted). It is well recognized that the WVDOC and MOCC are an arm of the State and are not a "person" within the meaning of Section 1983. See Duncan v. Western Regional Jail, 2017 WL 2682088, * 3 (S.D.W.Va. March 19, 2015)(finding that WRJ was "an arm of the State"); Skaggs v. Western Regional Jail, 2014 WL 66645, * 1, 4 (S.D.W.Va. Jan. 8, 2014)(adopting the finding that the WRJ is an arm of the State); Lewis v. Western Regional Jail, 2012 WL 3670393, * 5 (S.D.W.Va. July 24, 2012)(finding that WRJ was not a "person" subject to suit under Section 1983); Webb v. Parsons, 2011 WL 2076419 (S.D.W.Va. May 6, 2011)(finding that the West Virginia Regional Jail Authority, an agency of the State of West Virginia, is immune from suit under the Eleventh Amendment); Roach v. Burch, 825 F.Supp. 116, 117 (N.D.W.Va. 1993)(stating that the West Virginia Regional Jail Authority is not a "person" under Section 1983). Furthermore, pursuant to the Eleventh Amendment, the power of the federal judiciary does not extend to suits by a citizen against his or her own state. Hans v. Louisiana, 134 U.S. 1, 9, 10 S.Ct. 504, 33 L.Ed. 842 (1980); also see Will, supra, 491 U.S. at 66, 109 S.Ct. at 2309 (Suits against a state or state agencies for

6

monetary damages are barred by the Eleventh Amendment to the United States Constitution); Kinder v. PrimeCare Med., Inc., 2015 WL 1276748, * 2 (S.D.W.Va. March 19, 2015)(dismissing WRJ based on Eleventh Amendment grounds). Accordingly, the undersigned finds that the WVDOC and MOCC are not proper defendants in the above action.

**2.    Eighth Amendment:**

As a general matter, punishments prohibited under the Eighth Amendment include those that "involve the unnecessary and wanton infliction of pain." Estelle v. Gamble, 429 U.S. 97, 103, 97 S.Ct. 285, 290, 50 L.Ed.2d 251 (1976)(quoting Gregg v. Georgia, 428 U.S. 153, 173, 96 S.Ct. 2909, 2925, 49 L.Ed.2d 859 (1976)). "It not only outlaws excessive sentences but also protects inmates from inhumane treatment and conditions while imprisoned." Williams v. Benjamin, 77 F.3d 756, 761 (4th Cir. 1996). Under the Eighth Amendment, sentenced prisoners are entitled to "adequate food, clothing, shelter, sanitation, medical care and personal safety." Wolfish v. Levi, 573 F.2d 118, 125 (2d Cir. 1978), rev'd on other grounds, Bell v. Wolfish, 441 U.S. 520, 99 S.Ct. 1861, 60 L.Ed.2d 447 (1979). Thus, sentenced prisoners are entitled to reasonable protection from harm at the hands of fellow inmates and prison officials under the Eighth Amendment. See Farmer v. Brennan, 511 U.S. 825, 832-34, 114 S.Ct. 1970, 1976-77, 128 L.Ed.2d 811 (1994); Trop v. Dulles, 356 U.S. 86, 102, 78 S.Ct. 590, 598-99, 2 L.Ed.2d 630 (1958); Woodhous v. Commonwealth of Virginia, 487 F.2d 889, 890 (4th Cir. 1973). Inmates' claims, therefore, that prison officials disregarded specific known risks to their health or safety are analyzed under the deliberate indifference standard of the Eighth Amendment. See Pressly v. Hutto, 816 F.2d 977, 979 (4th Cir. 1987); Moore v. Winebrenner, 927 F.2d 1312, 1316 (4th Cir. 1991) cert. denied, 502 U.S. 828, 112 S.Ct. 97, 116 L.Ed.2d 68 (1991)(Stating that supervisory liability may be imposed

where prison supervisors "obdurately," "wantonly," or "with deliberate indifference" fail to address a known pervasive risk of harm to an inmate's health or safety). To establish a violation of the Eighth Amendment in the context of a challenge to conditions of confinement, an inmate must allege (1) a "sufficiently serious" deprivation under an objective standard and (2) that prison officials acted with "deliberate indifference" to the inmate's health and safety under a subjective standard. Wilson v. Seiter, 501 U.S. 294, 297 - 99, 111 S.Ct. 2321, 2323 - 2325, 115 L.Ed.2d 271 (1991); also see King v. Rubenstein, 825 F.3d 206, 218 (4th Cir. 2016)(quoting Strickler v. Waters, 989 F.2d 1375, 1379 (4th Cir. 1993))("[T]o make out a prima facie case that prison conditions violate the Eighth Amendment, a plaintiff must show both '(1) a serious deprivation of a basic human need; and (2) deliberate indifference to prison conditions on the part of prison officials.'"); Iko v. Shreve, 535 F.3d 225, 239 (4th Cir. 2008)(explaining that the above requirements "spring from the text of the amendment itself; absent intentionality, a condition imposed upon an inmate cannot properly be called 'punishment,' and absent severity, a punishment cannot be called 'cruel and unusual.'") To satisfy the objective component, Plaintiff must show that the challenged condition caused or constituted an extreme deprivation. De'Lonta v. Angelone, 330 F.3d 630, 634 (4th Cir. 2003). To demonstrate an "extreme deprivation," a plaintiff "must allege [1] a serious or significant physical or emotional injury resulting from the challenged conditions or [2] demonstrate a substantial risk of such serious harm resulting from [his] exposure to the challenged conditions." Odom v. South Caroline Dept. of Corrections, 349 F.3d 765, 770 (4th Cir. 2003); also see Wilson v. Seiter, 501 U.S. at 298, 111 S.Ct. at 2321(A sufficiently serious deprivation occurs when "a prison official's act or omission . . . result[s] in the denial of the minimal civilized measure of life's necessities."); White v. Gregory, 1 F.3d 267, 269 (4th Cir. 1991)("In *Strickler*, we held

8

that a prisoner must suffer 'serious or significant physical or mental injury' in order to be 'subjected to cruel and unusual punishment within the meaning of the' Eighth Amendment.") To satisfy the subjective component, Plaintiff must demonstrate a "deliberate indifference" to his health and safety by defendants. In particular, Plaintiff must establish that each Defendant "knows of and disregards an excessive risk to inmate health and safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." Farmer, supra, 511 U.S. at 837, 114 S.Ct. at 1979.

The Eighth Amendment "does not mandate comfortable prisons." Rhodes v. Chapman, 452 U.S. at 349, 101 S.Ct. at 2400. "To the extent . . . conditions are restrictive and even harsh, they are part of the penalty that criminal offenders pay for their offenses against society." Id. at 347, 101 S.Ct. 2392; Shakka v. Smith, 71 F.3d 162, 166 (4th Cir. 1995)(citing Hudson v. McMillian, 503 U.S. 1, 9, 112 S.Ct. 995, 117 L.Ed.2d 156 (1992)); Lopez v. Robinson, 914 F.2d 486, 490 (4th Cir. 1990); also see Alberti v. Klevenhagen, 790 F.2d 1220, 1228 (5th Cir. 1986)(the Eighth Amendment does not require "the provision of every amenity needed to avoid mental, physical, and emotional deterioration"). As stated above, prisoners are entitled to "adequate food, clothing, shelter, sanitation, medical care and personal safety." Wolfish, 573 F.2d at 125. In the instant case, Plaintiff contends that he was subjected to cruel and unusual conditions of confinement when he was denied certain work assignments and placement in certain educational programs due to his custody classification and sexual offender status. Taking Plaintiff's factual allegations as true, Plaintiff fails to state an Eighth Amendment violation. Prisoners have no constitutional right to any particular prison job or placement in educational programs. Altizer v. Paderick, 569 F.2d 812 (4th Cir. 1978)(custody classifications and work assignments are generally within the discretion of

9

the prison administrator); <u>Robinson v. SCDC Director</u>, 2018 WL 11150511, * 2 (D.S.C. March 6, 2018)(finding there is no constitutional right to any prison job); <u>Daniels v. Jarratt</u>, 2014 WL 11514222, * 3 (E.D.Va. July 22, 2014)(plaintiff's allegation concerning the loss of his prison job failed to state a plausible Eighth Amendment claim); <u>Gholson v. Murry</u>, 953 F.Supp. 709, 719 (E.D.Va. 1997)("When defendants denied plaintiffs access to work opportunities and certain education programs, this was clearly not a 'sufficiently serious' deprivation of 'the minimal civilized measure of life's necessities.'"); and <u>Harris v. Murray</u>, 761 F.Supp. 409 (E.D.Va. 1990)("[T]here is no constitutional right to an institutional job or, in fact, to rehabilitation at all."). Plaintiff clearly does not state facts in support of his Eighth Amendment claim that would entitle him to relief. There is no allegation of a serious deprivation of a basic human need. Further, there is no allegation of a serious or significant physical or emotional injury, or substantial risk of serious harm, resulting from the challenged condition. Accordingly, the undersigned recommends that Plaintiff's Eighth Amendment claim be dismissed.

**3.     Due Process Claim:**

To determine whether an inmate retains a certain liberty interest, the Court must look to the nature of the claimed interest and determine whether the Due Process Clause applies. <u>See</u> <u>Board of Regents v. Roth</u>, 408 U.S. 564, 570-71, 92 S.Ct. 2701, 2705-06, 33 L.Ed.2d 548 (1972). An inmate holds a protectable right in those interests to which he has a legitimate claim of entitlement. <u>Greenholtz v. Inmates of Nebraska Penal and Corr. Complex</u>, 442 U.S. 1, 7, 99 S.Ct. 2100, 2103, 60 L.Ed.2d 668 (1979)(quoting <u>Roth</u>, 408 U.S. at 577, 92 S.Ct. 2709). In <u>Gaston</u>, the Fourth Circuit determined that an inmate possesses a claim of entitlement in those interests "which were not taken away expressly or by implication, in the original sentence to confinement." <u>Id.</u> at 343. The

10

Supreme Court held in <u>Sandin v. Conner</u>, 515 U.S. 472, 115 S.Ct. 2293, 132 L.Ed.2d 418 (1995), that in order to show the deprivation of a liberty interest protected by the Due Process Clause, an inmate must show either that: (1) the conditions exceed the sentence imposed in such an unexpected manner as to give rise to protection by the Due Process Clause or (2) the confinement creates an atypical or significant hardship in relation to the ordinary incidents of prison life. <u>Id.</u>, 515 U.S. at 484, 115 S.Ct. at 2300 (citations omitted). Absent allegations indicating that there has been a restraint upon the inmate's freedom which imposes "an atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life," the inmate's claims have no merit. <u>Id.</u>

To the extent Plaintiff alleges a liberty interest in obtaining a certain work assignment or placement in educational programs during his imprisonment, the undersigned finds that Plaintiff's claim is without merit. The denial of privileges are matters clearly contemplated by Plaintiff's original sentence. <u>See</u> <u>Gaston</u>, 946 F.2d at 343 (To safely and efficiently run the prison, prison officials maintain broad discretion over an inmate's "location, variations of daily routines, changes in conditions of confinement (including administrative segregation), and the denial of privileges"); <u>Hatch v. District of Columbia</u>, 184 F.3d. 846, 855 (D.C. Cir. 1999)(stating that "the transfer of an inmate to less amenable and more restrictive quarter for nonpunitive reasons is well within the terms of confinement ordinarily contemplated by a prison sentence"). Furthermore, it is well established that an inmate has no absolute right to a prison job or placement in an educational training program. <u>See</u> <u>Zimmerman v. Tribble</u>, 226 F.3d 568, 571-72(7th Cir. 2000)(finding no liberty interest in attending educational or vocational classes to ear good conduct credit); <u>Rizzo v. Dawson</u>, 778 F.2d 527, 531 (9th Cir. 1985)(finding no liberty or property interest in vocational

training); <u>Gibson v. McEvers</u>, 631 F.2d 95, 98 (7th Cir. 1980)("An inmate's expectation of keeping a certain prison job does not amount to a property or liberty interest entitled to protection under the Due Process Clause"); <u>Daniels</u>, <u>supra</u>, 2014 WL 11514222, at * 3(finding no due process violation based upon Plaintiff's termination from his prison job); <u>Altizer</u>, <u>supra</u>, 569 F.2d at 813(inmates have no protected liberty interest in retaining prison jobs); <u>Robinson</u>, <u>supra</u>, 2018 WL 11150511, at * 2(finding that a prisoner has no due process right to any prison job); <u>Seibert v. Modhead</u>, 2012 WL 8123580, * 3 (E.D.Va. Sept. 4, 2012)(quoting <u>Penrod v. Zavaras</u>, 94 F.3d 1399, 1407 (10th Cir. 1996)(prison regulations that entitle prisoners to work or require a hearing prior to removing a prisoner from a job assignment create no constitutionally recognized liberty interest "because a denial of employment opportunities to an inmate does not impose an atypical and significant hardship on the inmate in relation to ordinary incidents of prison life."); <u>McNeal v. Mayberg</u>, 2008 WL 5114650 (E.D.Cal. Dec. 4, 2008)("Because Plaintiff has neither a liberty interest nor a property interest in vocational placement, Plaintiff was not entitled to any procedural due process protections in conjunction with her vocational training/placement opportunities, or lack thereof."); <u>Smith v. Michigan Dept. Of Corrections</u>, 2007 WL 1582223 (W.D.Mich. May 31, 2007)(finding that "prisoners have no recognized liberty or property interest in prison vocational or educational programs"); <u>Gholson</u>, <u>supra</u>, 953 F. Supp. at 716 (finding that the denial of work opportunities and certain education programs did not impose an atypical and significant hardship on inmates placed in segregation in relation to the ordinary incidents of prison life); <u>Alley v. Angelone</u>, 962 F.Supp. 827, 834 (E.D.Va. 1997)(prisoner did not have a protected interest in continued employment because lack of employment was clearly within the range of confinement that could be expected by most inmates). Accordingly, the undersigned recommends that Plaintiff's due process claim be dismissed.

4.     <u>**Equal Protection Claim**</u>:

Plaintiff alleges that Defendants discriminated against him because he was denied certain work assignments and placement in educational programs due to his security classification and sexual offender classification. (Document No. 3.) The Equal Protection Clause provides that a state may not "deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend. XIV, § 1. To establish an equal protection claim, a plaintiff "must first demonstrate that he has been treated differently from others with whom he is similarly situated and that the unequal treatment was the result of intentional or purposeful discrimination." <u>Veney v.Wyche</u>, 293 F.3d 726, 730-32 (4th Cir. 2002), citing <u>Morrison v. Garraghty</u>, 239 F.3d 648, 654 (4th Cir. 2001); <u>also see</u> <u>Fauconier</u>, <u>supra</u>, 966 F.3d at 277(The inmate must first show that he was treated differently than other similarly situated inmates). "If a plaintiff makes this showing, the court proceeds to determine whether the disparity in treatment can be justified under the requisite level of scrutiny." <u>Veney</u>, 293 F.3d at 730-32. "To account for the unique health and welfare concerns in the prison context," a court's review of an inmate's "challenge to a prison decision or policy is more demanding," as a court must "accord deference to the appropriate prison authorities." <u>Fauconier</u>, 966 F.3d at 277. In the prison context, disparate treatment passes muster so long as "the disparate treatment is 'reasonably related to [any] legitimate penological interest." <u>Veney</u>, 293 F.3d at 732(quoting <u>Shaw v. Murphy</u>, 532 U.S. 223, 225, 121 S.Ct. 1475, 149 L.Ed.2d 420 (2001)(alteration in original).

Plaintiff alleges that he is being treated differently than other inmates due to his security classification and sexual offender status. Plaintiff argues that his sexual offender status is a "suspect class" and he is being denied certain work assignments and placement in certain educational programs due to this status. Taking Plaintiff's allegations as true, Plaintiff has failed

to allege an Equal Protection violation. "[T]he class to which [an inmate] belongs consists of the persons confined as he was confined, subject to the same conditions to which he was subject." Moss v. Clark, 886 F.2d 686, 691 (4th Cir. 1989)(citation omitted)(alteration in original). Plaintiff appears to acknowledge that he is treated the same as other inmates having the same security classification or sexual offender status as Plaintiff. Plaintiff's complaint that he was treated differently than inmates without the sexual offender status or with different security classifications, does not establish that he was treated differently than similarly situated inmates. Furthermore, there is no allegation of discriminatory conduct against a suspect class. Contrary to Plaintiff's argument, "[s]ex offenders are not considered a suspect class, and custody classification is not a fundamental right." Buchnowski v. Street, 2018 WL 3349705, * 6 (W.D.N.C. July 9, 2018)(citations omitted); also see Frederick v. West Virginia Department of House and Human Services, 2019 WL 1198027, * 13 (S.D.W.Va. Feb. 15, 2019)("[S]ex offenders are not a protected class."); Wiley v. WV House of Delegates, 2017 WL 663671, * 7 (S.D.W.Va. January 30, 2017)("To the extent that the Complaint asserts that sex offenders are a suspect or quasi-suspect class, neither the United States Supreme Court, nor the Fourth Circuit, has directly addressed this specific issue. However, all other federal Circuit Courts that have addressed this issue have found that they are not.")(collecting cases); and Cunningham v. Parkersburg Housing Authority, 2007 WL 712392, * 6 (S.D.W.Va. March 6, 2007)(collecting cases finding that sex offenders are not a suspect class for equal protection analysis). Accordingly, the undersigned finds that Plaintiff has failed to state a claim for denial of equal protection of the law.

## PROPOSAL AND RECOMMENDATION

The undersigned therefore respectfully **PROPOSES** that the District Court confirm and accept the foregoing findings and **RECOMMENDS** that the District Court **DENY** Plaintiff's

14

Application to Proceed Without Prepayment of Fees and Costs (Document No. 1 and 6), **DISMISS** Plaintiff's Complaint (Document No. 3), and remove this matter from the Court's docket.

The Plaintiff is hereby notified that this "Proposed Findings and Recommendation" is hereby **FILED**, and a copy will be submitted to the Honorable United States District Judge Irene C. Berger. Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), and Rule 6(d) and 72(b), Federal Rules of Civil Procedure, the Plaintiff shall have fourteen (14) days (filing of objections) and three (3) days (if received by mail) from the date of filing of this Findings and Recommendation within which to file with the Clerk of this Court specific written objections identifying the portions of the Findings and Recommendation to which objection is made and the basis of such objection. Extension of this time period may be granted for good cause.

Failure to file written objections as set forth above shall constitute a waiver of *de novo* review by the District Court and a waiver of appellate review by the Circuit Court of Appeals. Snyder v. Ridenour, 889 F.2d 1363, 1366 (4th Cir. 1989); Thomas v. Arn, 474 U.S. 140, 155 (1985); Wright v. Collins, 766 F.2d 841, 846 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91, 94 (4th Cir. 1984). Copies of such objections shall be served on opposing parties, District Judge Berger and this Magistrate Judge.

The Clerk is requested to send a copy of this Proposed Findings and Recommendation to Plaintiff, who is acting *pro se*.

Date: January 19, 2022.



Omar J. Aboulhosn
United States Magistrate Judge

15